No. 32,032

W. B. McCarthy, as Trustee in Bankruptcy, *Appellant*, v. P. H. McKenna et al., *Appellees.*

(39 P. 2d 401)

Opinion filed January 26, 1935.

*S. S. Alexander* and *C. C. Calkin,* both of Kingman, for the appellant.

*John McKenna, H. E. Walter* and *Fred Hurd,* all of Kingman, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one by a trustee in bankruptcy of a corporation, against persons in possession of real estate under deed of the corporation, to determine interest of the grantees in the real estate. The grantees were directors of the corporation. The petition alleged the deed was made to defraud creditors. The petition further alleged defendants sometimes made one claim and sometimes another, and that an actual controversy existed between plaintiff and defendants. The prayer was that the controversy be adjudicated and that plaintiff be adjudged legal and equitable owner, entitled to possession, and entitled to rents and profits. The defense was, the trustee was barred by adjudication made in the proceeding to determine whether the corporation was bankrupt. The bankruptcy proceedings were exemplified in the pleadings. Judgment was rendered for defendants on the pleadings, and plaintiff appeals.

The corporation made a deed to defendants, dated February 8, 1930. The deed was filed for record on March 28, 1932. A petition in bankruptcy was filed against the corporation on April 23, 1932. Several acts of bankruptcy were charged. One of them was the following:

"And your petitioners further represent that said The Farmers Grain &

Mercantile Company, a corporation, is insolvent, and that within four months next preceding the date of this petition the said The Farmers Grain & Mercantile Company, a corporation, committed acts of bankruptcy, in that it did heretofore, to wit:

"First: Conveyed, transferred and concealed, while insolvent, a portion of its property to P. H. McKenna, S. F. Reynolds, A. Gerber and H. R. Thompson, all of whom were its creditors, with intent to prefer such creditors over its other creditors, by giving to them a deed to certain of its property in Kingman county, Kansas, and which deed was recorded in the office of the register of deeds of Kingman county, Kansas, on March 28, 1932, although such deed was dated February 8, 1930. That such transfer and deed were given to secure an indebtedness with the intent to hinder, delay and defraud its creditors, and for the purpose of giving such creditors a preference and such creditors not having taken possession of such property prior to the recording of such deed."

The bankrupt answered, giving the history of the deed. The corporation, while solvent, needed funds which were procured by the grantees on their promissory note for $5,000; the deed was made February 8, 1930, and was placed in escrow, to protect the grantees; the grantees were obliged to pay the note, and on March 28, 1932, the deed was delivered to the grantees and was placed of record.

The matter was referred to a special master to "determine the issues presented as to the insolvency and bankruptcy of the alleged bankrupt, and to make his findings and recommendations thereon."

The matter was submitted to the master on an agreed statement of facts. Paragraph 6 of the stipulation contained several subdivisions. Subdivisions A, B and C related to what was shown by records in the office of the register of deeds. Subdivisions A and B referred to chattel mortgages. Subdivision C referred to the deed, and simply described it, giving date, parties, consideration, description and date and place of record.

Subdivision F of paragraph 6 of the stipulation was that the corporation was insolvent for at least four months previous to date of filing the petition in bankruptcy.

Paragraphs 8 and 9 of the stipulation gave in detail the facts relating to the origin of the deed and fulfillment of its purpose, as stated above.

Paragraph 10 of the stipulation reads:

"It is further agreed that the matters herein stipulated as facts are for the purpose of the hearing upon the determination as to whether or not the said Farmers Grain & Elevator Company shall be adjudicated a bankrupt, and shall not be treated as binding upon either party hereto for any other purpose or in any other action or proceedings."

The report of the special master begins as follows:

"The undersigned, special master, to whom the above-entitled matter was referred, in order to determine whether or not an act of bankruptcy had been committed by the alleged bankrupt, now respectfully reports to the court as follows: . . ."

It may be observed here this embodies a correct and accurate interpretation of the authority of the special master, and his conclusions are to be interpreted accordingly.

The special master stated, as a conclusion of law, the following:

"The special master concludes as a matter of law that the transactions set out in agreed statement of fact No. 6, under subdivisions a, b and c thereof, do not constitute acts of bankruptcy."

The special master found that other transactions did constitute acts of bankruptcy. Adjudication that the corporation was a bankrupt followed, McCarthy was appointed trustee, and in February, 1933, the present action was commenced in the district court of the proper county of this state, pursuant to power conferred on the trustee and the court by 11 U. S. C. A., § 110 (e):

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, . . . For the purpose of such recovery, any court of bankruptcy, as defined in this title, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

The petitioning creditors and the bankrupt were the only parties to the bankruptcy proceeding, and were the only parties who litigated anything. Defendants were not parties. The answer of the corporation was signed and verified by P. H. McKenna (a grantee in the deed), as president of the corporation. Neither the board of trustees of the corporation nor the trustees of the corporation answered or otherwise pleaded. No defendant in this action filed answer or other pleading in the capacity of an individual. The special master reported appearances as follows:

"Your special master respectfully reports to the court that several hearings have been had in the above-entitled matter, at which the petitioning creditors were represented by counsel and the alleged bankrupt (was) likewise represented by its counsel, . . ."

As indicated, the petition in bankruptcy was filed April 23, 1932. It alleged insolvency, and then alleged commission of an act of bankruptcy within four months next preceding April 23, 1932. The act specified was conveyance of property by deed given with two

intentions, to prefer the grantees as creditors, and to defraud other creditors. No issue was tendered with respect to any fraud on creditors generally, committed more than four months before April 23, 1932, any more than issue was tendered with respect to preference more than four months before April 23, 1932.

The answer of the corporation explained the deed. The explanation pushed the essence of the deed transaction back to February 8, 1930, made the filing of the deed in March, 1932, incidental to fulfillment of purpose for which it was given, and so undertook to meet the allegation of act of bankruptcy committed within four months previous to April 23, 1932.

The issue submitted to the special master was status of the corporation and nothing else, and, as indicated, he so interpreted the order of reference. The special master had no concern with whether the corporation, a year or two before the petition was filed, disposed of real estate in fraud of creditors by deed which then existing creditors might have procured to be set aside.

By express stipulation the evidence before the special master was submitted for the purpose of determining status of the corporation, only—whether the corporation should be adjudged bankrupt.

The approved conclusions of the special master determined that part of the petition to have the corporation adjudged bankrupt was well founded, and part was not.

Now comes the trustee and seeks to set aside the deed as fraudulent, not simply in the right of petitioning creditors, or creditors who, accepting the corporation's status as bankrupt, filed claims; not in the right of the misdemeanants, the corporation and its fraudulent grantees; but in the same right as creditors who might have attacked the deed if bankruptcy had not intervened.

Should final judgment in the trustee's action be in his favor, it will not embrace any conclusion of the bankruptcy court that the corporation was or was not, for this or that reason, subject to an adjudication that the corporation was bankrupt.

Under the circumstances which have been stated at length, the defendants, grantees in the deed of February 8, 1930, contend title to the land the trustee seeks to recover was adjudicated in their favor by the adjudication a certain act of the corporation was not an act of bankruptcy—the deed matter. In support of the contention, defendants present an attenuated argument on the subject of privity, which need not be examined.

Defendants contend the question involved has been decided in their favor by this court in the case of *Dedrick v. Bank,* 75 Kan. 187, 88 Pac. 883. The syllabus reads:

"The United States district court for the district of Kansas, in proceedings regularly had under the national bankruptcy act, duly adjudged J. H. Shirfey to be a bankrupt, upon the ground that he had within four months prior to the commencement of such proceedings mortgaged his entire property with the intent to hinder, delay and defraud his creditors. Afterward the trustees appointed for the estate of such bankrupt commenced a suit to set aside the mortgage so given and recover the property covered thereby or its value. *Held,* that in such suit the adjudication of bankruptcy was conclusive against the mortgagees as to the intent of the mortgagor, and that evidence of their own good faith in the transaction was immaterial, even though they were not parties to the bankruptcy proceedings."

In the opinion it was said:

"An adjudication of bankruptcy upon the ground that the bankrupt sold or encumbered his property with intent to hinder, delay and defraud his creditors is conclusive." (p. 189.)

It is not necessary to call attention to the manifest distinction between the Dedrick case and this one. Accepting the Dedrick decision as announcing broad conclusiveness of an adjudication made in response to a petition in involuntary bankruptcy, the decision was perhaps sustainable when it was rendered in 1907.

The extent to which an adjudication made in response to a petition in involuntary bankruptcy is *res judicata,* is a subject upon which federal decisions are controlling. In opposition to the decision in the Dedrick case may be placed the decision in *Ward v. Central Trust Co. of Illinois,* 261 Fed. 344 (C. C. A., Seventh Circuit) (1919). Morrison was adjudged bankrupt. Within four months previous to filing the petition in bankruptcy he deeded real estate to the trust company. The opinion reads:

"Appellant contends for a right to show that Morrison was not a bankrupt when he was so adjudged, that there were no creditors with valid claims then or since, and that appellee was wanting in legal capacity to be given and to accept the post of trustee, and therefore lacked capacity to sue appellant on account of the fraudulent transfer. These contentions constitute no more than a collateral attack upon the judgment and record of the bankruptcy court; that is, the judge who heard this chancery cause had no jurisdiction to review the existence of the necessary facts which the judge of the bankruptcy court found and acted upon. But that was the extent of the binding effect of the adjudication as a judgment *in rem;* and, although the petition in bankruptcy charged that the conveyance from Morrison to the appellant was an act of bankruptcy, appellant was entitled to have (as he

did have) a full opportunity to controvert the trustee's allegations and proofs respecting appellant's guilty knowledge and fraudulent conduct. *Gratiot County State Bank v. Johnson, Trustee*, 249 U. S. 246." (p. 346.)

In the case of *In re McCrum*, 214 Fed. 207 (C. C. A., Second Circuit) (1914), the following declaration of principles was made:

". . . even in contested proceedings an adjudication is *res adjudicata* and conclusive upon those who have not actually taken part in the contest only as to the status of the bankrupt and not as to the commission of a particular act of bankruptcy, although it be the one alleged in the petition." (p. 213.)

In 1 Remington on Bankruptcy, § 525 (4th ed., 1934), the earlier cases taking the broad view of *res judicata* are referred to, and it is then said:

"But the true rule is that the adjudication of bankruptcy is a judgment *in rem* or *quasi in rem* as to the status of the debtor as a bankrupt, and, as such, is binding on the whole world as to such status; but, . . . except, perhaps, as to parties who have actually litigated the issues, the adjudication of bankruptcy is not binding in subsequent litigation on the matter of insolvency, nor even on the matter of the commission of the very act of bankruptcy on which the adjudication is based; that the doctrine of *res judicata* does not apply, because the subjects of the two proceedings are different, the subject in the proceedings on the bankruptcy petition being the status of the debtor, whilst in the subsequent litigation the subject is the property. . . ." (p. 645.)

An independent review of the decisions will not be undertaken here. The court is in accord with the modern view.

In this instance, the subject of status of the corporation was segregated and insulated from beginning to end of the proceeding. Even the stipulated facts presented the deed transaction for the sole purpose of the inquiry whether the corporation was bankrupt. The stated conclusion was, the transaction was not an act of bankruptcy, and that was all that was adjudicated with respect to the deed matter.

The matter of status of the corporation having been determined, the trustee may now invoke the remedy which would have been available to creditors if bankruptcy had not intervened.

The judgment of the district court is reversed, and the cause is remanded with direction to set aside the judgment rendered on the pleadings.